**EXHIBIT "E"**



# ORIGINAL



FILED IN OFFICE

MAY 2 1 2013

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

## FULTON COUNTY SUPERIOR COURT
### STATE OF GEORGIA

MARIAN T. COOPER and
ROBERT L. COOPER,

                 Plaintiffs,

       vs.

HSBC MORTGAGE SERVICES,
INC.,

                 Defendant.

Civil Action

File No. 2013CV231571

## COMPLAINT

Plaintiffs Marian T. and Robert L. Cooper (the "Coopers") bring this

Complaint against HSBC Mortgage Services, Inc., and respectfully show as

follows:

### THE HOME

1.

The Coopers seek relief in connection with the below-described parcel of real

estate (the "Home") located in Upson County, Georgia, with a street address of

737 Peachbelt Road, Thomaston, Georgia 30286.

2.

The Home is more particularly described as follows:

-1-

ALL THAT CERTAIN TRACT OR PARCEL OF LAND, TOGETHER WITH ALL IMPROVEMENTS THEREON KNOWN AS 737 PEACHBELT ROAD, CONTAINING 5.40 ACRES, MORE OR LESS, SITUATE, LYING AND BEING IN THE SOUTHWESTERLY INTERSECTION OF PEACHBELT ROAD AND STATE ROUTE 74 (SPUR) IN LAND LOT NOS. 250, 251 AND 260 OF THE 10TH LAND DISTRICT OF UPSON COUNTY, GEORGIA, BEING SHOWN AND DESIGNATED AS THE EASTERLY PORTION OF TRACT "A" AS SHOWN AND DELINEATED ON THAT CERTAIN PLAT ENTITLED PLAT FOR JOHN C. EDENFIELD, DATED OCTOBER 8, 1986, PREPARED BY CHARLES L. MOORE AND GARY F. SELL, REGISTERED LAND SURVEYORS, AND RECORDED IN PLAT RECORD 12, AT PAGE 39, IN THE OFFICE OF THE CLERK OF THE SUPERIOR COURT OF UPSON COUNTY, GEORGIA, WHICH SAID PLAT, INCLUDING THE BOUNDARIES, METES, COURSES AND DISTANCES OF SAID REAL ESTATE AS SHOWN AND DELINEATED THEREON, IS BY THIS REFERENCE INCORPORATED HEREIN IN AID OF THIS DESCRIPTION, WHICH SAID TRACT IS MORE PARTICULARLY DESCRIBED AS FOLLOWS, TO-WIT: BEGINNING AT A POINT ON THE SOUTHWESTERLY SIDE OF STATE ROUTE 74 (SPUR) WHICH POINT IS SHOWN AND DELINEATED ON SAID PLAT AS THE P.O.B. & P.O.B. REF. POINT AND FROM SAID POINT RUNNING THENCE SOUTH 37 DEGREES 43 MINUTES 19 SECONDS WEST A DISTANCE OF 472.015 FEET TO A POINT WHICH IS AN EQUIDISTANCE BETWEEN THE NORTHERNMOST AND WESTERNMOST POINTS OF SAID TRACT "A" AS SHOWN ON SAID PLAT; RUNNING THENCE IN A SOUTHEASTERLY DIRECTION IN A STRAIGHT LINE TO A POINT ON THE WESTERN BOUNDARY OF PEACHBELT ROAD WHICH POINT IS AN EQUIDISTANCE BETWEEN THE EASTERNMOST AND SOUTHERNMOST POINTS OF TRACT "A"; RUNNING THENCE IN A NORTHEASTERLY DIRECTION ALONG THE NORTHWESTERN BOUNDARY OF PEACHBELT ROAD TO ITS INTERSECTION WITH THE SOUTHWESTERN BOUNDARY OF SAID STATE ROUTE 74 (SPUR); RUN THENCE ALONG THE SOUTHWESTERN BOUNDARY OF SAID STATE ROUTE 74

-2-

(SPUR) NORTH 42 DEGREES 22 MINUTES 53 SECONDS WEST A
DISTANCE OF 480.71 FEET TO THE POINT OF BEGINNING.

### THE PARTIES AND JURISDICTION

*The Plaintiffs*

3.

The Coopers are residents of Upson County, Georgia.

*The Defendant*

4.

Defendant HSBC Mortgage Services, Inc. ("HSBC") is an Illinois corporation authorized to do business in Georgia.

5.

HSBC may be served in care of its registered agent for service in Georgia: CT Corporation System, 1201 Peachtree Street, NE, Atlanta, Fulton County, Georgia 30361.

6.

This Court's exercise of personal jurisdiction over HSBC would not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution because HSBC purposefully established minimum contacts in Georgia such that the maintenance of this action does not offend traditional

-3-



notions of fair play and substantial justice.[1]

7.

This Court may exercise personal jurisdiction over HSBC, in accordance with Georgia's long arm statute for any one, or any combination of, the following reasons: (1) because HSBC, transacts business in Georgia; (2) because HSBC, has committed (or threatens to commit) a tortious act, omission, or injury in Georgia; (3) because HSBC, has committed a tortious injury in Georgia that was caused by an act or omission outside of Georgia, and HSBC, regularly does or solicits business in Georgia, engages in certain other persistent courses of conduct in Georgia, or derives substantial revenue from services rendered in Georgia; (4) because HSBC, owns, uses, or possesses real property situated within Georgia; or, (5) because HSBC, has a registered agent in and is authorized to do business in Georgia.[2]

8.

This Court has subject matter jurisdiction.

---

[1] *E.g., Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408, 414 (1984).

[2] O.C.G.A. § 9-10-91(1), (2), (3), or (4).

-4-



## VENUE

### 9.

Venue is proper in Fulton County because HSBC "maintains its registered office in" Fulton County.[3]

## THE FACTS

### 10.

In 2005, the Coopers purchased and acquired fee simple title to the Home via a warranty deed (the "Warranty Deed") that was executed on January 24, 2005.

### 11.

The Warranty Deed was recorded on January 26, 2005, in the Upson County deed records, and indexed at Book 969, Page 113 thereof.

### 12.

The Coopers financed the purchase price of the Home with a home mortgage loan.

### *The Promissory Note and the Security Deed*

### 13.

In 2006, the Coopers refinanced their home mortgage loan by entering into a loan agreement (the "Loan") with "Creve Cor Mortgage, Inc.," [*sic*] a/k/a

---

[3] O.C.G.A. § 14-2-510, Ga. Const. art. VI, § 2, ¶ VI.

Crevecor Mortgage, Inc. ("Crevecor"), a Missouri corporation, the proceeds of which loan satisfied their existing home mortgage.

14.

To evidence the Loan, the Coopers signed a promissory note (the "Note") in the face amount of $402,000 in favor of Crevecor.

15.

As security for the Note, the Coopers conveyed title to the Home to Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Crevecor via a security deed (the "Security Deed," Attachment "A").

16.

The Security Deed was recorded on or about August 7, 2006, in the Upson County deed records, and indexed at Book 1059, Page 038 thereof.

17.

The Security Deed purports to grant MERS a "power of sale" authorizing it to sell the Home at public auction in the event of an uncured default (the "Power of Sale").[4]

18.

Under paragraph 22 of the Security Deed MERS, in the event of a default, must

---

[4] Security Deed at ¶ 22.

provide the Coopers with certain required notices, including a notice of an

opportunity to cure the default:

> **Acceleration; Remedies.** Lender shall give notice to Borrower prior to
> acceleration following Borrower's breach of any covenant or agreement
> in this Security Instrument.... The notice shall specify: (a) the default;
> (b) the action required to cure the default; (c) a date, not less than 30
> days from the date the notice is given to Borrower, by which the default
> must be cured; and (d) that failure to cure the default on or before the
> date specified in the notice may result in acceleration of the sums
> secured by this Security Instrument and sale of the Property. The notice
> shall further inform Borrower of the right to reinstate after acceleration
> and the right to bring a court action to assert the non-existence of a
> default or any other defense of Borrower to acceleration and sale.[5]

19.

Paragraph 19 of the Security Deed features a right-of-reinstatement provision

after acceleration. It states, in pertinent part, as follows:

> **Borrower's Right to Reinstate After Acceleration.** If Borrower meets
> certain conditions, Borrower shall have the right to have enforcement of
> this Security Instrument discontinued at any time prior to the earliest of:
> (a) five days before sale of the Property pursuant to any power of sale
> contained in this Security Instrument; (b) such other period as
> Applicable Law might specify for the termination of Borrower's right to
> reinstate; or (c) entry of a judgment enforcing this Security Instrument.
> Those conditions are that Borrower: (a) pays Lender all sums which then
> would be due under this Security Instrument and the Note as if no
> acceleration had occurred; (b) cures any default of any other covenants
> or agreements; (c) pays all expenses incurred in enforcing this Security
> Instrument, including, but not limited to, reasonable attorneys' fees,
> property inspection and valuation fees, and other fees incurred for the

---

[5] Security Deed at ¶ 22.

-7-

purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged.... Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred....[6]

*November 21, 2008: Attempted assignment*
*of "Mortgage" from MERS to HSBC*

20.

On or about November 21, 2008, MERS, "AS NOMINEE FOR CREVE COR MORTGAGE INC." [*sic*], attempted to assign its interest in the "Mortgage" [*sic*] to HSBC.

21.

The instrument evidencing the attempted assignment of the "Mortgage" to HSBC (the "Assignment") was recorded on or about December 1, 2008, in the Upson County deed records, and indexed at Book 1168, Page 200 thereof.

22.

The Assignment is remarkable in several respects, as demonstrated in Figure 1 below.

---

[6] Security Deed at ¶ 19.



MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR CREVE COR MORTGAGE INC. "ITS SUCCESSORS AND ASSIGNS"
On November 21st, 2008

By
ALICE A. ASCENCIO, Vice- President

WITNESS

Lizzeat Thomas

WITNESS

Joann Wilcox

**Figure 1 — Excerpt from Attachment "B"**

23.

First, the Assignment is executed by only one corporate officer: one "*Alice A. Ascencio,*" in her capacity as "Vice-President."

24.

Second, the notarization of Ascencio's signature is of dubious authenticity.

25.

Third, the Assignment is neither attested nor countersigned by "the secretary or an assistant secretary or the cashier or assistant cashier of the corporation," as required for corporate conveyancing of any "interest in real property" under the

-9-

effective (pre-July 1, 2011) version of O.C.G.A. § 14-5-7.

26.

Fourth, no corporate seal is affixed to the Assignment.

27.

Fifth, two witnesses, acting in unknown capacities, "witnessed" the

Assignment: "Lizzest Thomas" and "Joann Wilcox."

> May 2, 2013: The Coopers receive a notice of
> default, acceleration, and Sale Under Power.

28.

On or about May 2, 2013, HSBC's attorneys, McCurdy & Candler, LLC,

transmitted a letter the Coopers advising them that they were in default of their

mortgage loan and demanding "immediate payment of the total indebtedness."

29.

The May 2, 2013 letter notified the Coopers of HSBC's intention to auction off

the Home at a nonjudicial foreclosure sale on June 4, 2013.

30.

The May 2, 2013 letter contained a copy of the "Notice of [Foreclosure] Sale

Under Power" that HSBC intended to publish in the Upson Beacon (the "Notice of

Sale" Attachment "C").

-10-

31.

Remarkably, the Notice of Sale failed to include a "full and complete

description of the property to be sold"; it only made reference to a recorded

instrument for its description — as demonstrated in an excerpt from the Notice of

Sale in Figure 2 below:

Because of default in the payment of the indebtedness, secured by a Security Deed executed by Robert L
Cooper and Marian T Cooper to Mortgage Electronic Registration Systems, Inc., dated July 31, 2006 in
amount of $402,000.00, and recorded in Deed Book 1059, Page 38, Upson County, Georgia Records; a
transferred to HSBC MORTGAGE SERVICES INC by assignment; the undersigned, HSBC MORT
SERVICES INC pursuant to said deed and the note thereby secured, has declared the entire am         d
indebtedness due and payable and pursuant to the power of sale contained in said deed, wil         first
Tuesday in June, 2013 , during the legal hours of sale, at the Courthouse door in Upson County         ublic
outcry to the highest bidder for cash, the property described in said deed to-wit:

All that parcel of land in 10th Land District, Upson County, State of Georgia, as more fully des    bed in Deed
Book 969, Page 113, ID# T3-1, being known and designated as metes and bound property.

By fee simple deed from Thomas J. Jackson and Norma R. Jackson as set forth in Deed Book 969, Page 113
dated 01/24/2005 and recorded 01/26/2005, Upson County, Records, State of Georgia.

**Figure 2 — Excerpt from Attachment "C"**

32.

Also remarkable for their absence from the May 2, 2013 letter (and from any

other communication from HSBC or its counsel) were the notices required to be

given to the Coopers under Paragraphs 19 and 22 of the Security Deed, as listed in

the following paragraphs.

33.

The May 2, 2013 letter did not give a notice specifying "the default."

34.

The May 2, 2013 letter did not give a notice specifying "the action required to cure the default."

35.

The May 2, 2013 letter did not give a notice specifying "a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured."

36.

The May 2, 2013 letter did not give a notice specifying "that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by [the security deed] and sale of the [Subject] Property."

37.

The May 2, 2013 letter did not inform the Coopers "of [their] right to reinstate after acceleration."

38.

The May 2, 2013 letter did not inform the Coopers of their "right to bring a

-12-



court action to assert the non-existence of a default or any other defense ... to

acceleration and sale."

*Defective Notices of Sale Published in May, 2013*

39.

On May 8th and 15th, the same Notices of Sale that had been transmitted to the

Coopers on May 2, 2013, were also published in the *Upson (County) Beacon*.

40.

The Notice of Sale published in the *Beacon* also failed to provide a full and

complete description of the Home.

41.

All conditions precedent to the Coopers' performance obligations have been

performed, have occurred, or have been excused.

### STIPULATION NOT TO SEEK
### MORE THAN $75,000 IN DAMAGES

42.

The Coopers do not seek cancellation of any debt or security, and seek only to

rescind a threatened wrongful foreclosure and any subsequent conveyance of the

Home.[7]  Accordingly, The Coopers, irrevocably and unconditionally stipulate that

---

[7] *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977).

-13-

they will neither seek nor accept more than $75,000 in damages in this action,

exclusive of interest and costs — even if a jury verdict exceeds this amount.[8]

**FIRST CLAIM**
**BREACH OF CONTRACT**

43.

The general allegations in paragraphs 1–42 are restated and incorporated herein

by this reference.

44.

Assuming, but not conceding, that HSBC is the proper successor to Crevecor, it

breached contractual duties it owes to the Coopers under the Security Deed.

45.

Neither HSBC nor any other party sent a notice to the Coopers that sets forth

the five items required to be stated under Paragraph 22, namely:

(a)   "the default";

(b)   "the action required to cure the default";

(c)   "a date, not less than 30 days from the date the notice is given to
Borrower, by which the default must be cured";

(d)   "that failure to cure the default on or before the date specified in the
notice may result in acceleration of the sums secured by [the]

---

[8] See, e.g., *In re Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir.1992) ("Litigants who want to prevent removal must file a binding stipulation or affidavit with their complaints....").

Security Instrument and sale of the Property"; or,

(c)    that the "Borrower [has] the right to reinstate after acceleration and
       the right to bring a court action to assert the non-existence of a
       default or any other defense of Borrower to acceleration and sale."

46.

HSBC's failure to honor Paragraph 22 of the Security Deed before accelerating

the Loan and commencing nonjudicial foreclosure proceedings represents a breach

of its contractual duties to the Coopers.[9]

47.

The Coopers are entitled to an award of damages, including rescission of the

sale, and to general and special damages, according to proof, but no more than

$75,000 exclusive of interest and costs — even if a jury verdict exceeds this

---

[9] Paragraph 22 is part of the standard form security deed approved by Fannie Mae and
Freddie Mac, and is therefore a term found in the paperwork associated with literally millions of
residential mortgage loans. See, e.g., Georgia Security Deed form 3011 at
http://tinyurl.com/d29ezhy (Freddie Mac) (last viewed April 29, 2013); and Georgia Fannie Mae
Security Deed at http://tinyurl.com/- 85ry9hr (Fannie Mae) (last viewed April 29, 2013). It has
been interpreted and applied by courts on many occasions as representing a clear condition
precedent to a lender's ability to foreclose. Just a few of these published decisions interpreting its
language include the following: *Konsulian v. Busey Bank, N.A.* 61 So.3d 1283, 1285 (Fla. Dist.
Ct. App. 2d Dist. 2011) (pre-acceleration notice under ¶ 22 is condition precedent to
foreclosure); *In re Sharpe*, 391 B.R. 117 (Bankr. N.D. Ala. 2008) (breach of contract due to
failure to give proper pre-acceleration notice and right to cure), *Douglass v. Countrywide Home
Loans*, No. 2-05-385-CV (Tex. App. 10/26/2006) (bank's summary judgment motion denied due
to factual issue of satisfaction of notice requirement under similar security-deed provision); see
also *Wells Fargo Bank, N.A. v. Shalvey*, 2007 Ohio 3928 (Ohio App. 7/26/2007) (reversal of
summary judgment regarding proper notice required by similar provision in security deed due to
trial court's considering improperly authenticated document).

amount due to breach of contract.

## SECOND CLAIM
## NOMINAL DAMAGES

48.

The general allegations in paragraphs 1–42 are restated and incorporated herein by this reference.

49.

With respect to the Coopers' claim for breach-of-contract against HSBC and , if they are able only to prove a less than substantial measure of actual damages, or their damages are not susceptible of reasonable certainty of proof as to their extent, the Coopers are entitled to recover nominal damages in vindication of their having brought this action "upon a good cause."[10]

50.

The Coopers are entitled to an award of nominal damages from HSBC and according to the circumstances of this case, but no more than $75,000 exclusive of interest and costs — even if a jury verdict exceeds this amount.

---

[10] See, e.g., *Brock v. King*, 279 Ga. App. 335, 342 (2006), aff'd, sub nom. *King v. Brock*, 282 Ga. 56 (2007).

-16-

## THIRD CLAIM
## WRONGFUL FORECLOSURE

51.

The general allegations in paragraphs 1–47 are restated and incorporated herein by this reference.

52.

Georgia law, codified in part at O.C.G.A. § 23-2-114, requires "[p]owers of sale in deeds of trust, mortgages, and other [ ] instruments [to] be strictly construed and [ ] be fairly exercised."[11]

53.

Breach of the requirement of fairly exercising the power of sale is actionable: "[t]here exists a statutory duty upon a [mortgage lender] to exercise [the power of sale] fairly and in good faith.... Although arising from a contractual right, breach of this duty is a tort [, i.e., "wrongful foreclosure,"] compensable at law."[12]

---

[11] Although there is a technical difference between the concepts of "deed of trust" or "mortgage" and "security deed" these terms have been declared to be effectively interchangeable in this context. See, e.g., *U.S. Bank N.A. v. Gordon*, 289 Ga. 12, 14 (2011) ("[T]his court has treated deeds to secure debts... as equitable mortgages.")

[12] *Clark v. West*, 196 Ga. App. 456, 457 (1990), *Calhoun First Nat'l Bank v. Dickens*, 264 Ga. 285 (1994).

54.

A mortgage lender also breaches this duty if, in foreclosing, it violates terms of the parties' loan agreement.[13]

55.

A claim for wrongful foreclosure gives the aggrieved debtor alternative legal remedies of (a) cancellation of the foreclosure sale and recovery of damages not associated with the value of the property, or (b) damages for the loss of the equity in the unlawfully-foreclosed property.[14]

56.

"It is not necessary that [a] foreclosure be completed to bring an action for wrongful foreclosure. The fact that the creditor initiated foreclosure proceedings by advertising the properties for sale is sufficient to support a claim for wrongful foreclosure."[15]

---

[13] See *Heritage Creek Dev. Corp. v. Colonial Bank*, 268 Ga. App. 369, 374 (2004).

[14] *Calhoun First Nat'l Bank v. Dickens*, 264 Ga. 285 (1994) (reconsideration denied June 24, 1994), *Roylston v. Bank of America, N.A.*, 290 Ga. App. 556, 556 n.1 (2008), *Kennedy v. Gwinnett Commercial Bank*, 155 Ga. App. 327 (1980) (alternative remedies for wrongful foreclosure).

[15] *Clark v. West*, 196 Ga. App. 456, 457 (1990), *Sale City Peanut & Milling Co. v. Planters & Citizens Bank*, 107 Ga. App. 463, 465 (1963).

57.

HSBC is not authorized to exercise the power of sale, and is liable for wrongful

foreclosure in at least four ways.

*First, HSBC cannot exercise the power of sale because
the security deed was never properly assigned to it.*

58.

An agent's unauthorized conveyance of an interest in property will not pass

title and cannot divest its corporate principal of such interest.[16]

59.

For conveyances prior to July of 2011, there are just two methods of

memorializing within the four corners of a written instrument the authority of the

person signing the instrument to convey an interest in corporate-owned real

estate.[17]

---

[16] See *Rohm & Haas Co. v. Gainesville Paint & Supply Co.*, 225 Ga. App. 441, 442 (1997), *Dixon v. Bristol Sa*, 102 Ga. 461 (1897) (deed delivered by agent without authority of the principal "conveys no title either to the grantee or purchasers under him").

[17] This is confirmed by the State Bar of Georgia's revised 2008 title standards: "When a corporate instrument is either (i) executed by a corporate officer, that person's signature is attested by the secretary or assistant secretary (or other officer authorized to authenticate corporate records), and the corporate seal or a *facsimile* thereof is affixed, or (ii) executed by the president or vice president and that person's signature is attested by the secretary or assistant secretary (or other officer authorized to authenticate corporate records), a title examiner may assume that the officer executing the document in fact holds the position indicated, that such person is authorized to execute the document, and that the officer's signature is genuine. Comment: Source — O.C.G.A. Section 14-2-151. See also O.C.G.A. Section 14-5-7, Clause (ii)

-19-

60.

The first method requires (a) the signature of the instrument by the corporation's president or a vice president, (b) attestation of the signature by the corporate secretary, and (c) the affixing of the corporation's seal to the instrument.[18]

61.

The second method arises where no corporate president or vice president has signed the instrument, but an "attested corporate seal" is affixed to the instrument which indicates that the person signing the instrument is authorized to do so.[19]

---

above became effective July 1, 1992. The Examiner should bear in mind that the evidentiary presumption afforded by O.C.G.A. Sections 14-2-151 and 14-5-7 do not establish recording requirements. Recording is governed by O.C.G.A. Section 44-2-14, which requires, with respect to execution, a signature, two witnesses, and an attestation or acknowledgment. Neither the presence of a corporate seal, nor the signature of an officer specified in O.C.G.A. Section 14-5-7, is required for recording." STATE BAR OF GEORGIA TITLE STANDARDS 9.2.

[18] O.C.G.A. § 14-5-7. See *Bale v. Todd*, 123 Ga. 99, 103 (1905) ("no corporate seal being attached, no presumption could arise that the officers of the company had authority to execute the instrument"). Of course, even where the formalities associated with the safe harbor of § 14-2-151 are satisfied, the statutory presumption of "apparent authority" is still a *rebuttable* presumption. See, e.g., *Adams Loan & Inv. Co. v. Dolvin Realty Co.*, 48 Ga. App. 183, 172 S.E. 606, 607 (1934). ("An instrument executed in the name of a corporation by its president and under the seal of the corporation ... is presumed to have been executed by its authority, but this presumption is rebuttable"*[cits.]*).

[19] *Deljoo v. Suntrust Mortgage*, 295 Ga. App. 187 (2008). But see O.C.G.A. § 14-2-151 (b) (no corporate seal, but attested by the secretary or assistant secretary of the corporation or other officer to whom the bylaws or the directors have delegated the responsibility for authenticating records of the corporation).

62.

Where an instrument conveying an interest in real estate doesn't satisfy either

of the two foregoing methods, it must be presumed that the instrument represents

an unauthorized conveyance; and, therefore, it will not divest the corporate

principal of the interest sought to be conveyed.[20]

*Second, HSBC failed to satisfy contractual*
*conditions precedent to acceleration of the loan.*

63.

When the terms of a loan document require "notice of default" and right to

cure, the loan cannot be accelerated before the condition precedent is satisfied.[21]

64.

Assuming, but not conceding, that HSBC is the proper successor to Crevecor,

---

[20] See *Rohm & Haas Co.*, 225 Ga. App. at 442, *Dixon*, 102 Ga. 461. The legislature confirmed the foregoing analysis in 2011 in a backwards sort of way. It amended O.C.G.A. § 14-5-7(b) to create the presumption that the signature of "a president, vice president, secretary, or assistant secretary [for the purpose of releasing] or transfer[ing] a security deed or mortgage" is presumptively authentic and authorized even in the absence of a formal attestation or seal. However, this provision did not go into effect until July 1, 2011, and does not affect conveyances recorded prior to that date—including the one at issue here.

[21] See *Fife v. Anderson Realty Brokers*, 155 Ga. App. 475, 476 (1980); see also *Sires v. Luke*, 544 F. Supp. 1155, 1164 (S.D. Ga. 1982) (notice of default and time to cure was a condition precedent to acceleration of note); *Stanley v. Hart*, 254 Ga. App. 258, 260 (2002) (writ of possession vacated where 15-day notice to cure was not given as required by agreement); O.C.G.A. § 13-3-4 (condition precedent must be performed before the contract becomes absolute and obligatory upon the other party).

HSBC breached the contractual duties owed the Coopers by their lender as described under Count I for Breach of Contract.

65.

Because HSBC failed to satisfy conditions precedent to its authority to declare an incurable default and to accelerate the Loan, any attempt to exercise the power of sale would be unauthorized and tortious.

> *Third, HSBC's advertising of the foreclosure sale is deficient*
> *per se because it fails to give a full description of the Home.*

66.

Pursuant to O.C.G.A. § 44-14-162, a nonjudicial power of foreclosure sale incorporates by reference the legal requirements imposed on a sheriff's sale in the county in which the sale is to occur.

67.

The sheriff's-sale-advertising requirements of O.C.G.A. § 9-13-140 apply to nonjudicial foreclosure sales.[22]

68.

The failure to satisfy any one of the so-called "*minimum legal requirements*" governing nonjudicial foreclosure sales — which includes the sheriff's-sale-

---

[22] See, e.g., *Dan Woodley Communities, Inc. v. Suntrust Bank*, 310 Ga. App. 656 (2011).

advertising requirements of O.C.G.A. § 9-13-140 — renders the advertisement defective as a matter of law. (That is to say, it is defective whether or not the defect could have chilled the proverbial "bid.").[23]

69.

One of these *minimum legal requirements* is found in O.C.G.A. § 9-13-140(a) — a provision mandating that the notice of a sheriff's sale (i.e., nonjudicial foreclosure sale) include the *"full and complete description of the property to be sold...."*

70.

HSBC's legal advertisement for the Home fails to provide a *full and complete description* of the Home as required under O.C.G.A. § 9-13-140(a) — a clear breach of *a minimum legal requirement.*

71.

The breach of this *minimum legal requirement* renders the advertisement

---

[23] "The minimum legal requirements of a foreclosure advertisement are prescribed in O.C.G.A. § 9-13-140(a), and only a failure to properly include those items will render the advertisement defective as a matter of law." *Racette v. Bank of Amerrica., N.A.,* 318 Ga. App. 171, 175–76 (2012) (citing to *Southeast Timberlands,* infra). See *Shingler v. Coastal, etc., Credit Assn.,* 180 Ga. App. 539, 540 (1986) (failure to satisfy a legal requirement of a nonjudicial foreclosure sale does *not* present "a question of fact whether it affected a fair exercise of the power [of sale] and caused chilling of the sales price"). See also *Southeast Timberlands, Inc. v. Security National Bank,* 220 Ga. App. 359, 360 (1996) (physical precedent only) (failure to satisfy O.C.G.A. § 9-13-140(a) requirements renders advertisement defective as a matter of law) (citing to *Shingler*).

defective as a matter of law.[24]

> *Fourth, HSBC failed to satisfy the assignment*
> *requirement set forth under O.C.G.A. § 44-14-162(b)*

### 72.

Georgia law requires any foreclosing party to be the of-record assignee of the security deed (granting the Power of Sale) "prior to the time of sale in the office of the clerk...."[25]

### 73.

Because, as of the time of preparing this complaint, no proper assignment of the Security Deed to HSBC has been perfected HSBC is not authorized to exercise the Power of Sale.

### 74.

The actions of HSBC amount to the tort of wrongful foreclosure.

### 75.

The Coopers are entitled to rescission of any foreclosure sale and to special and general damages, according to proof based on HSBC's threatened wrongful foreclosure.

---

[24] O.C.G.A. § 9-13-140(a); *Southeast Timberlands, Inc. v. Security National Bank*, 220 Ga. App. 359 (1996) (precedent only).

[25] O.C.G.A. § 44-14-162(b).

76.

The Coopers are entitled to an award of damages because they have suffered extreme mental and emotional distress and humiliation.

77.

The Coopers do not seek more than $75,000 exclusive of interest and costs — even if a jury verdict exceeds this amount.

### FOURTH CLAIM
### EXPENSES OF LITIGATION

78.

The general allegations in paragraphs 1–47 and 51–77 are restated and incorporated herein by this reference.

79.

The Coopers have incurred and will continue to incur substantial attorney's fees and expenses to prosecute the above-styled action.

80.

HSBC's actions have demonstrated bad faith, have no legal justification, and have caused the Coopers unnecessary delay and expense.

81.

The Coopers are entitled to recover all costs of the prosecution of this matter,

including reasonable attorney's fees, pursuant to O.C.G.A. § 13-6-11 and other applicable law.

### NOTICE OF INTENT TO RECORD LIS PENDENS

82.

The Coopers hereby notify all concerned that they are undertaking to record a Notice of Lis Pendens regarding the Home in the Lis Pendens Docket of the real estate records of the Clerk of Upson County Superior Court.

WHEREFORE, the Coopers request an order or judgment for the following relief:

(a)   On their First Claim: special and general damages for breach of contract, and an order rescinding and setting aside the foreclosure sale, including the cancellation of any Foreclosure Deed or Deed Under Power, or any subsequently-recorded muniment of title;

(b)   On their Second Claim: an award of nominal damages if so appropriate;

(c)   On their Third Claim: an order rescinding and setting aside the foreclosure sale, including the cancellation of any Foreclosure Deed or Deed Under Power, or any subsequently-recorded muniment of title, and an appropriate award of damages related to the consequences of the foreclosure;

(d)   On their Fourth Claim: an award of attorney's fees and expenses of litigation pursuant to O.C.G.A. § 13-6-11 (not to exceed $75,000 when aggregated with any other damages award);

(e)   For all costs;

-26-

(f)   For TRIAL BY JURY on any issue so triable; and,

(g)   For such other and further relief as the Court may deem equitable and just in the premises (with no damages to exceed $75,000 in the aggregate).

Respectfully submitted,

RICHARD S. ALEMBIK, PC

By: _____

Richard S. Alembik
State Bar No. 008770
Attorney for Plaintiffs

315 W. Ponce de Leon Ave.
Ste. 250
Decatur, GA 30030-5100
(404) 373-0205
(404)795-8999 FAX

**ADDRESS FOR STATUTORY ELECTRONIC SERVICE:**
general_mailbox@alembik.com



# ORIGINAL

## General Civil Case Filing Information Form (Non-Domestic)

**Court**  County Fulton          Date Filed 05/20/2013
☑ Superior                                     MM-DD-YYYY
☐ State          Docket # 2013CV231571

FILED IN OFFICE
MAY 21 2013
DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

**Plaintiff(s)**
Cooper  Marian T.
Last    First    Middle I. Suffix Prefix    Maiden

Cooper  Robert L.
Last    First    Middle I. Suffix Prefix    Maiden

Last    First    Middle I. Suffix Prefix    Maiden

Last    First    Middle I. Suffix Prefix    Maiden

**Defendant(s)**
HSBC Mortgage Services, Inc.
Last    First    Middle I. Suffix Prefix    Maiden

Last    First    Middle I. Suffix Prefix    Maiden

Last    First    Middle I. Suffix Prefix    Maiden

Last    First    Middle I. Suffix Prefix    Maiden

**No. of Plaintiffs** 2          **No. of Defendants** 1

**Plaintiff/Petitioner's Attorney**  ☐ Pro Se

Alembik      Richard      S.
Last         First        Middle I.   Suffix

**Bar #** 008770

---

### Check Primary Type (Check only **ONE**)

☐ Contract/Account
☐ Wills/Estate
☐ Real Property
☐ Dispossessory/Distress
☐ Personal Property
☐ Equity
☐ Habeas Corpus
☐ Appeals, Reviews
☐ Post Judgment Garnishment, Attachment, or Other Relief
☐ Non-Domestic Contempt
☑ Tort (If tort, fill in right column)
☐ Other General Civil Specify _____

---

### If Tort is Case Type:
### (Check no more than **TWO**)

☐ Auto Accident
☐ Premises Liability
☐ Medical Malpractice
☐ Other Professional Negligence
☐ Product Liability
☑ Other Specify Wrongful Foreclosure

**Are Punitive Damages Pleaded?** ☐ Yes ☑ No

KAL

**FILED IN OFFICE**

JUN 0 7 2013

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

### FULTON COUNTY SUPERIOR COURT
### STATE OF GEORGIA

MARIAN T. COOPER and ROBERT L.
COOPER,

                Plaintiffs,

      vs.

HSBC MORTGAGE SERVICES, INC.,

                Defendant.

Civil File No. 2013-cv-231571

### USCR 5.2 CERTIFICATE OF
### SERVICE OF DISCOVERY

The undersigned certifies that on <u>May 30</u>, 20<u>13</u>, and in connection with the

above-styled action, he served the following discovery material, to wit:

☐ First ☐ Second ☐ Third ☐ Fourth ☐ *Supplemental*

☐ Responses to the ☐ First ☐ Second ☐ Third ☐ Fourth

☐ Interrogatories ☐ Request for Production ☐ Request for Admissions

☒ Omnibus Discovery (Request for Production, Interrogatories)

Propounded by: ☒ Plaintiff(s) ☐ Defendant(s)

Upon the following: ☐ Plaintiff(s) ☒ Defendant(s)

HSBC Mortgage Services, Inc.
c/o its Registered Agent: CT Corporation System
1201 Peachtree St., NE
Atlanta, GA 30361

ORIGINAL

☒ By delivery for service with the summons;

☐ By first class mail to the foregoing address; [and]

☐ By certified mail no. _____ to the foregoing address.

RICHARD S. ALEMBIK, PC.

By: /s/ Richard S. Alembik
Richard S. Alembik
Georgia State Bar No. 008770
Attorney for Plaintiffs
Marian T. Cooper and Robert L. Cooper

315 W. Ponce de Leon Ave.
Ste. 250
Decatur, GA 30030-5100
(404) 373-0205
(404)795-8999 (fax)
general_mailbox@alembik.com

- 2 -

KAL



FILED IN OFFICE

JUN 0 7 2013

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

# FULTON COUNTY SUPERIOR COURT
## STATE OF GEORGIA

MARIAN T. COOPER and ROBERT
L. COOPER,

              Plaintiffs,

        vs.

HSBC MORTGAGE SERVICES,
INC.,

             Defendant.

Civil File # 2013-cv-231571

## NOTICE OF FILING OF AFFIDAVIT OF SERVICE
## ON HSBC MORTGAGE SERVICES, INC.

PLEASE TAKE NOTICE that Plaintiffs Marian T. Cooper and Robert L.
Cooper, file herewith the affidavit of service (Attachment "A" hereto) on the
following defendant: HSBC Mortgage Services, Inc. regarding the following
service date: **May 30, 2013.**

                           RICHARD S. ALEMBIK, PC

By:

                           Richard S. Alembik
                           State Bar No. 008770
                           Attorney for Plaintiffs
                           Marian T. Cooper and
                           Robert L. Cooper

315 W. Ponce de Leon Ave.
Ste. 250
Decatur, GA 30030
(404) 373-0205
(404)795-8999 FAX
general_mailbox@alembik.com

ORIGINAL

## FULTON COUNTY SUPERIOR COURT
## STATE OF GEORGIA

| | |
|---|---|
| MARIAN T COOPER and ROBERT L COOPER, | Case Ref.: Civil File No. 2013-cv-231571 |
| Plaintiffs, | Name and Address of Person to be Served: |
| vs. | HSBC Mortgage Services, Inc. |
| | c/o its Registered Agent: CT Corporation System |
| HSBC MORTGAGE SERVICES, INC., | 1201 Peachtree St., NE |
| Defendant. | Atlanta, GA 30361 |

STATE OF GEORGIA                                                    COUNTY OF FULTON

### AFFIDAVIT OF SERVICE BY APPOINTED PROCESS SERVER

Personally appeared before the undersigned, <u>Frank L. Swindle</u> who, being duly sworn, states under oath as follows:

**1.**

I am over 18 years of age, a citizen of the United States, and not related to any of the parties to the above-styled action. The statements made in this affidavit are true and correct and are based on my personal knowledge. I am competent to testify to the facts set forth herein. I have been appointed to serve process either ☐ on a permanent basis, or ☐ for this case by the Fulton County Superior Court, as evidenced by the order attached as Exhibit "A."

**2.**

On _Thurs May 30, 2013_, at approximately _10:30_ a.m. / p.m., I served: HSBC Mortgage Services, Inc. with the following document(s): ☒ Complaint / Petition ☒ Clerk's Summons ☒ Other document(s): Lis Pendens and Omnibus Discovery, a true and accurate copy of which is/are attached hereto and incorporated herein by reference as exhibit "B," in the following manner: ☐ personal service; ☐ notoriously by leaving the above document(s) at his/her most notorious place of abode in this County, delivered into the hands of _____, who is described as follows: age, about _____ years; weight, about _____ pounds; height, about _____ feet, _____ inches, domiciled at his/her residence; ☒ on a corporation / limited liability company by leaving the document(s) with _Shakinah Edwards of CTCorp_ ☐ who is in charge of the office and place of doing business of said entity or otherwise designated to accept service, ☐ the registered agent, ☐ a manager of the said LLC, ☐ an officer of the said entity; ☐ by posting same to the door of the referenced Subject Property & depositing a copy in the U.S. mail First Class, in an envelope properly addressed, said copy containing notice to HSBC Mortgage Services, Inc. to answer at the hour and place in said summons.

☐ I have made diligent search and HSBC Mortgage Services, Inc. is not to be found in the State of Georgia.

Sworn to and subscribed before me this _30_
day of _May_, 2013.

_____
NOTARY PUBLIC,
State of Georgia
My Commission expires: _7/18/2015_

*FURTHER AFFIANT SAYETH NAUGHT*

_____
Frankie L. Swindle
Affiant / Process Server

# IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

Administrative Order No. OS 167 2 46 - 24

**IN RE: ORDER FOR APPOINTMENT FOR PROCESS SERVICE**

Having read and considered the petitions and criminal records, and it appearing to the Court that sufficient grounds exist that each petitioner meets the requirements for appointment by the Court; it is hereby

**ORDERED** and **ADJUDGED** that the following:

FILED IN OFFICE

JAN – 2 2013

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

| | | |
|---|---|---|
| Abebe, Chali | George, Randal | Pierceall, John |
| Adams Jr., John | Gruhn, Tammie | Poncinie, Richard |
| Andrews, Gene | Handley, Wiley | Price, Eric |
| Baker, Benjamin | Hassan, Muhsin | Price, James |
| Benito, Richard | Heimerich, Richard | Rauser, Jayne |
| Benito, Robert | Highsmith, Amos | Reddick, Derek |
| Benson, James | Home, Crystal | Reid, Cletis |
| Bishop, Walter | Horton, Christopher | Rice, Robert |
| Blake, Patricia | Irvin, Randall | Rutledge Sr., Stanley |
| Bolling, Katherine | Johnson, Christina | Shadix, Jimmy |
| Briley, Donnie | Jones, Alicia | Shepherd, Elizabeth |
| Brinkley, Schellaundye | Kim, Erika | Sibbald, John |
| Brookshire, David | Kim, Leonard | Singleton, Wesley |
| Buck, David | King, Heather | Sleep, Thomas |
| Burns, Kenneth | Langford, Nan | Smith, Terral |
| Byer, Edmond | Langford, Steve | Smith, Virginia |
| Canupp, Brenda | Letts, William | Smith Jr., Bruce |
| Chastain, Michael | Lewis, Donald | Snellings, Sharon |
| Cline, Travis | Lewis, Kevin | Sorensen, Neilse |
| Creech, David | Lobin, Jerome | Stanton, Chris |
| Cunningham, Sally | Lobin, Sarah | Stone, Rodney |
| Davenport, Alterick | Lutwack, William | Swindle, Frank |
| DeVaughn, Carl | Maggard, Andrew | Tamaroff, Paul |
| Dreeman, Doug | Mallas, Nicholas | Tarwater, Margaret |
| Duchon, Deborah | Malone, Rachael | Tassaw, Behane |
| Evans, Alonzo | Martinelli, Robin | Thompson, Vanessa |
| Faulkner, Dana | McClellan, Rodney | Thrash, Nancy |
| Feathers, Jennifer | Moore, Jeanine | Trumble, Garfield |
| Ferrero, Amy | Morgan, Todd | Velasquez, Julius |
| Flatow, Kevin | Moss, Cynthia | Walker, Reginald |
| Fogle, Johnny | Nowik, Dennis | Washington, Sabrina |
| Ford, Ronnie | Oakley, Joseph | Webber, Melina |
| Fox, Juhani | Obrien, Christopher | West, Eric |
| Freese, Jessica | O'Leary, Christine | Wilson, Kinley |
| Fuller, Thomas | Orlins, Peter | Wingo, Michael |
| Gayle, Earl | Perkins, Karen | Woodman, Howard |
| | | Wright, Wade |

be appointed and authorized to serve as a Permanent Process Server in the Fulton County Superior Court, for the Calendar Year 2013, without the necessity of an order for appointment in each individual case.

BY ORDER OF THE Court this **2nd** day of January, 2013.

Cynthia Wright, Chief Judge
Fulton County Superior Court
Atlanta Judicial Circuit

BOOK        PAGE
05167  -  247   EXHIBIT ___A___
                PAGE _2_ OF _2_

**Fulton County Superior Court**
**State of Georgia**

MARIAN T. COOPER and
ROBERT L. COOPER,

               Plaintiffs,

        vs.

HSBC MORTGAGE SERVICES, INC.,

               Defendant.

Civil Action No. 2013-CV-231571

FILE COPY

EXHIBIT
PAGE 1 OF 43

**S U M M O N S**

**TO THE ABOVE-NAMED DEFENDANT(S):**

    You are hereby summoned and required to file with the Clerk of said Court, whose address is:

        Fulton County Superior Court
        Cathelene Robinson, Clerk of Superior Court
        Lewis Slaton Courthouse
        136 Pryor St., SW
        Atlanta, GA 30303,

and to serve a copy upon the plaintiff(s)' attorney, to wit:

        Richard S. Alembik, PC
        315 W. Ponce de Leon Avenue,
        Suite 250
        Decatur, GA 30030-5100

an ANSWER to the complaint which is herewith served upon you, within thirty (30) days after service of this Summons upon you, exclusive of the date of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint, plus the costs of this action.

    This _21st_ day of _May_ , 20_13_ ,

               Fulton County Superior Court

        By:                             
               (Deputy) Clerk



# ORIGINAL



FILED IN OFFICE

MAY 2 1 2013

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

## FULTON COUNTY SUPERIOR COURT
### STATE OF GEORGIA

MARIAN T. COOPER and
ROBERT L. COOPER,

                     Plaintiffs,

          vs.

HSBC MORTGAGE SERVICES,
INC.,

                   Defendant.

Civil Action

File No. 2013CV231571

### COMPLAINT

    Plaintiffs Marian T. and Robert L. Cooper (the "Coopers") bring this
Complaint against HSBC Mortgage Services, Inc., and respectfully show as
follows:

#### THE HOME

##### 1.

    The Coopers seek relief in connection with the below-described parcel of real
estate (the "Home") located in Upson County, Georgia, with a street address of
737 Peachbelt Road, Thomaston, Georgia 30286.

##### 2.

    The Home is more particularly described as follows:

-1-

ALL THAT CERTAIN TRACT OR PARCEL OF LAND, TOGETHER WITH ALL IMPROVEMENTS THEREON KNOWN AS 737 PEACHBELT ROAD, CONTAINING 5.40 ACRES, MORE OR LESS, SITUATE, LYING AND BEING IN THE SOUTHWESTERLY INTERSECTION OF PEACHBELT ROAD AND STATE ROUTE 74 (SPUR) IN LAND LOT NOS. 250, 251 AND 260 OF THE 10TH LAND DISTRICT OF UPSON COUNTY, GEORGIA, BEING SHOWN AND DESIGNATED AS THE EASTERLY PORTION OF TRACT "A" AS SHOWN AND DELINEATED ON THAT CERTAIN PLAT ENTITLED PLAT FOR JOHN C. EDENFIELD, DATED OCTOBER 8, 1986, PREPARED BY CHARLES L. MOORE AND GARY F. SELL, REGISTERED LAND SURVEYORS, AND RECORDED IN PLAT RECORD 12, AT PAGE 39, IN THE OFFICE OF THE CLERK OF THE SUPERIOR COURT OF UPSON COUNTY, GEORGIA, WHICH SAID PLAT, INCLUDING THE BOUNDARIES, METES, COURSES AND DISTANCES OF SAID REAL ESTATE AS SHOWN AND DELINEATED THEREON, IS BY THIS REFERENCE INCORPORATED HEREIN IN AID OF THIS DESCRIPTION, WHICH SAID TRACT IS MORE PARTICULARLY DESCRIBED AS FOLLOWS, TO-WIT: BEGINNING AT A POINT ON THE SOUTHWESTERLY SIDE OF STATE ROUTE 74 (SPUR) WHICH POINT IS SHOWN AND DELINEATED ON SAID PLAT AS THE P.O.B. & P.O.B. REF. POINT AND FROM SAID POINT RUNNING THENCE SOUTH 37 DEGREES 43 MINUTES 19 SECONDS WEST A DISTANCE OF 472.015 FEET TO A POINT WHICH IS AN EQUIDISTANCE BETWEEN THE NORTHERNMOST AND WESTERNMOST POINTS OF SAID TRACT "A" AS SHOWN ON SAID PLAT; RUNNING THENCE IN A SOUTHEASTERLY DIRECTION IN A STRAIGHT LINE TO A POINT ON THE WESTERN BOUNDARY OF PEACHBELT ROAD WHICH POINT IS AN EQUIDISTANCE BETWEEN THE EASTERNMOST AND SOUTHERNMOST POINTS OF TRACT "A"; RUNNING THENCE IN A NORTHEASTERLY DIRECTION ALONG THE NORTHWESTERN BOUNDARY OF PEACHBELT ROAD TO ITS INTERSECTION WITH THE SOUTHWESTERN BOUNDARY OF SAID STATE ROUTE 74 (SPUR); RUN THENCE ALONG THE SOUTHWESTERN BOUNDARY OF SAID STATE ROUTE 74

-2-

(SPUR) NORTH 42 DEGREES 22 MINUTES 53 SECONDS WEST A
DISTANCE OF 480.71 FEET TO THE POINT OF BEGINNING.

### THE PARTIES AND JURISDICTION

*The Plaintiffs*

3.

The Coopers are residents of Upson County, Georgia.

*The Defendant*

4.

Defendant HSBC Mortgage Services, Inc. ("HSBC") is an Illinois corporation

authorized to do business in Georgia.

5.

HSBC may be served in care of its registered agent for service in Georgia: CT

Corporation System, 1201 Peachtree Street, NE, Atlanta, Fulton County, Georgia

30361.

6.

This Court's exercise of personal jurisdiction over HSBC would not violate the

Due Process Clause of the Fourteenth Amendment to the United States

Constitution because HSBC purposefully established minimum contacts in

Georgia such that the maintenance of this action does not offend traditional

-3-



notions of fair play and substantial justice.[1]

7.

This Court may exercise personal jurisdiction over HSBC, in accordance with Georgia's long arm statute for any one, or any combination of, the following reasons: (1) because HSBC, transacts business in Georgia; (2) because HSBC, has committed (or threatens to commit) a tortious act, omission, or injury in Georgia; (3) because HSBC, has committed a tortious injury in Georgia that was caused by an act or omission outside of Georgia, and HSBC, regularly does or solicits business in Georgia, engages in certain other persistent courses of conduct in Georgia, or derives substantial revenue from services rendered in Georgia; (4) because HSBC, owns, uses, or possesses real property situated within Georgia; or, (5) because HSBC, has a registered agent in and is authorized to do business in Georgia.[2]

8.

This Court has subject matter jurisdiction.

---

[1] *E.g., Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408, 414 (1984).

[2] O.C.G.A. § 9-10-91(1), (2), (3), or (4).

-4-

## VENUE

### 9.

Venue is proper in Fulton County because HSBC "maintains its registered office in" Fulton County.[3]

## THE FACTS

### 10.

In 2005, the Coopers purchased and acquired fee simple title to the Home via a warranty deed (the "Warranty Deed") that was executed on January 24, 2005.

### 11.

The Warranty Deed was recorded on January 26, 2005, in the Upson County deed records, and indexed at Book 969, Page 113 thereof.

### 12.

The Coopers financed the purchase price of the Home with a home mortgage loan.

*The Promissory Note and the Security Deed*

### 13.

In 2006, the Coopers refinanced their home mortgage loan by entering into a loan agreement (the "Loan") with "Creve Cor Mortgage, Inc.," [*sic*] a/k/a

---

[3] O.C.G.A. § 14-2-510, Ga. Const. art. VI, § 2, ¶ VI.

Crevecor Mortgage, Inc. ("Crevecor"), a Missouri corporation, the proceeds of which loan satisfied their existing home mortgage.

14.

To evidence the Loan, the Coopers signed a promissory note (the "Note") in the face amount of $402,000 in favor of Crevecor.

15.

As security for the Note, the Coopers conveyed title to the Home to Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Crevecor via a security deed (the "Security Deed," Attachment "A").

16.

The Security Deed was recorded on or about August 7, 2006, in the Upson County deed records, and indexed at Book 1059, Page 038 thereof.

17.

The Security Deed purports to grant MERS a "power of sale" authorizing it to sell the Home at public auction in the event of an uncured default (the "Power of Sale").[4]

18.

Under paragraph 22 of the Security Deed MERS, in the event of a default, must

---

[4] Security Deed at ¶ 22.

provide the Coopers with certain required notices, including a notice of an

opportunity to cure the default:

> **Acceleration; Remedies**. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument.... The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.[5]

19.

Paragraph 19 of the Security Deed features a right-of-reinstatement provision

after acceleration. It states, in pertinent part, as follows:

> **Borrower's Right to Reinstate After Acceleration**. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the

---

[5] Security Deed at ¶ 22.

-7-

purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged.... Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred....[6]

*November 21, 2008: Attempted assignment*
*of "Mortgage" from MERS to HSBC*

20.

On or about November 21, 2008, MERS, "AS NOMINEE FOR CREVE COR MORTGAGE INC." [*sic*], attempted to assign its interest in the "Mortgage" [*sic*] to HSBC.

21.

The instrument evidencing the attempted assignment of the "Mortgage" to HSBC (the "Assignment") was recorded on or about December 1, 2008, in the Upson County deed records, and indexed at Book 1168, Page 200 thereof.

22.

The Assignment is remarkable in several respects, as demonstrated in Figure 1 below.

---

[6] Security Deed at ¶ 19.

-8-



**Figure 1 — Excerpt from Attachment "B"**

23.

First, the Assignment is executed by only one corporate officer: one "*Alice A. Ascencio*," in her capacity as "Vice-President."

24.

Second, the notarization of Ascencio's signature is of dubious authenticity.

25.

Third, the Assignment is neither attested nor countersigned by "the secretary or an assistant secretary or the cashier or assistant cashier of the corporation," as required for corporate conveyancing of any "interest in real property" under the

-9-

effective (pre-July 1, 2011) version of O.C.G.A. § 14-5-7.

26.

Fourth, no corporate seal is affixed to the Assignment.

27.

Fifth, two witnesses, acting in unknown capacities, "witnessed" the

Assignment: "Lizzest Thomas" and "Joann Wilcox."

> May 2, 2013: The Coopers receive a notice of
> default, acceleration, and Sale Under Power.

28.

On or about May 2, 2013, HSBC's attorneys, McCurdy & Candler, LLC,

transmitted a letter the Coopers advising them that they were in default of their

mortgage loan and demanding "immediate payment of the total indebtedness."

29.

The May 2, 2013 letter notified the Coopers of HSBC's intention to auction off

the Home at a nonjudicial foreclosure sale on June 4, 2013.

30.

The May 2, 2013 letter contained a copy of the "Notice of [Foreclosure] Sale

Under Power" that HSBC intended to publish in the Upson Beacon (the "Notice of

Sale" Attachment "C").

-10-

31.

Remarkably, the Notice of Sale failed to include a "full and complete description of the property to be sold"; it only made reference to a recorded instrument for its description — as demonstrated in an excerpt from the Notice of Sale in Figure 2 below:

Because of default in the payment of the indebtedness, secured by a Security Deed executed by Robert L. Cooper and Marian T Cooper to Mortgage Electronic Registration Systems, Inc., dated July 31, 2006 in amount of $402,000.00, and recorded in Deed Book 1059, Page 38, Upson County, Georgia Records; transferred to HSBC MORTGAGE SERVICES INC by assignment; the undersigned, HSBC MORT SERVICES INC pursuant to said deed and the note thereby secured, has declared the entire amount due indebtedness due and payable and pursuant to the power of sale contained in said deed, will first Tuesday in June, 2013 , during the legal hours of sale, at the Courthouse door in Upson County public outcry to the highest bidder for cash, the property described in said deed to-wit:

All that parcel of land in 10th Land District, Upson County, State of Georgia, as more fully described in Deed Book 969, Page 113, ID# T3-1, being known and designated as metes and bound property.

By fee simple deed from Thomas J. Jackson and Norma R. Jackson as set forth in Deed Book 969, Page 113 dated 01/24/2005 and recorded 01/26/2005, Upson County, Records, State of Georgia.

**Figure 2 — Excerpt from Attachment "C"**

32.

Also remarkable for their absence from the May 2, 2013 letter (and from any other communication from HSBC or its counsel) were the notices required to be given to the Coopers under Paragraphs 19 and 22 of the Security Deed, as listed in

the following paragraphs.

33.

The May 2, 2013 letter did not give a notice specifying "the default."

34.

The May 2, 2013 letter did not give a notice specifying "the action required to cure the default."

35.

The May 2, 2013 letter did not give a notice specifying "a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured."

36.

The May 2, 2013 letter did not give a notice specifying "that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by [the security deed] and sale of the [Subject] Property."

37.

The May 2, 2013 letter did not inform the Coopers "of [their] right to reinstate after acceleration."

38.

The May 2, 2013 letter did not inform the Coopers of their "right to bring a

-12-



court action to assert the non-existence of a default or any other defense ... to

acceleration and sale."

*Defective Notices of Sale Published in May, 2013*

39.

On May 8th and 15th, the same Notices of Sale that had been transmitted to the

Coopers on May 2, 2013, were also published in the *Upson (County) Beacon.*

40.

The Notice of Sale published in the *Beacon* also failed to provide a full and

complete description of the Home.

41.

All conditions precedent to the Coopers' performance obligations have been

performed, have occurred, or have been excused.

### STIPULATION NOT TO SEEK
### MORE THAN $75,000 IN DAMAGES

42.

The Coopers do not seek cancellation of any debt or security, and seek only to

rescind a threatened wrongful foreclosure and any subsequent conveyance of the

Home.[7] Accordingly, The Coopers, irrevocably and unconditionally stipulate that

---

[7] *Hunt v. Washington State Apple Adver. Comm'n,* 432 U.S. 333, 347 (1977).

-13-

they will neither seek nor accept more than $75,000 in damages in this action,

exclusive of interest and costs — even if a jury verdict exceeds this amount.[8]

### FIRST CLAIM
### BREACH OF CONTRACT

43.

The general allegations in paragraphs 1–42 are restated and incorporated herein

by this reference.

44.

Assuming, but not conceding, that HSBC is the proper successor to Crevecor, it

breached contractual duties it owes to the Coopers under the Security Deed.

45.

Neither HSBC nor any other party sent a notice to the Coopers that sets forth

the five items required to be stated under Paragraph 22, namely:

(a)  "the default";

(b)  "the action required to cure the default";

(c)  "a date, not less than 30 days from the date the notice is given to
Borrower, by which the default must be cured";

(d)  "that failure to cure the default on or before the date specified in the
notice may result in acceleration of the sums secured by [the]

---

[8] See, e.g., *In re Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir.1992) ("Litigants who want to prevent removal must file a binding stipulation or affidavit with their complaints....").

Security Instrument and sale of the Property"; or,

(e)    that the "Borrower [has] the right to reinstate after acceleration and

the right to bring a court action to assert the non-existence of a

default or any other defense of Borrower to acceleration and sale."

46.

HSBC's failure to honor Paragraph 22 of the Security Deed before accelerating

the Loan and commencing nonjudicial foreclosure proceedings represents a breach

of its contractual duties to the Coopers.[9]

47.

The Coopers are entitled to an award of damages, including rescission of the

sale, and to general and special damages, according to proof, but no more than

$75,000 exclusive of interest and costs — even if a jury verdict exceeds this

---

[9] Paragraph 22 is part of the standard form security deed approved by Fannie Mae and Freddie Mac, and is therefore a term found in the paperwork associated with literally millions of residential mortgage loans. See, *e.g.*, Georgia Security Deed form 3011 at http://tinyurl.com/d29ezhy (Freddie Mac) (last viewed April 29, 2013); and Georgia Fannie Mae Security Deed at http://tinyurl.com/- 85ry9hr (Fannie Mae) (last viewed April 29, 2013). It has been interpreted and applied by courts on many occasions as representing a clear condition precedent to a lender's ability to foreclose. Just a few of these published decisions interpreting its language include the following: *Konsulian v. Busey Bank, N.A.* 61 So.3d 1283, 1285 (Fla. Dist. Ct. App. 2d Dist. 2011) (pre-acceleration notice under ¶ 22 is condition precedent to foreclosure); *In re Sharpe*, 391 B.R. 117 (Bankr. N.D. Ala. 2008) (breach of contract due to failure to give proper pre-acceleration notice and right to cure), *Douglass v. Countrywide Home Loans*, No. 2-05-385-CV (Tex. App. 10/26/2006) (bank's summary judgment motion denied due to factual issue of satisfaction of notice requirement under similar security-deed provision); see also *Wells Fargo Bank, N.A. v. Shalvey*, 2007 Ohio 3928 (Ohio App. 7/26/2007) (reversal of summary judgment regarding proper notice required by similar provision in security deed due to trial court's considering improperly authenticated document).

amount due to breach of contract.

### SECOND CLAIM
### NOMINAL DAMAGES

48.

The general allegations in paragraphs 1–42 are restated and incorporated herein by this reference.

49.

With respect to the Coopers' claim for breach-of-contract against HSBC and ,
if they are able only to prove a less than substantial measure of actual damages, or their damages are not susceptible of reasonable certainty of proof as to their extent, the Coopers are entitled to recover nominal damages in vindication of their having brought this action "upon a good cause."[10]

50.

The Coopers are entitled to an award of nominal damages from HSBC and according to the circumstances of this case, but no more than $75,000 exclusive of interest and costs — even if a jury verdict exceeds this amount.

---

[10] See, e.g., *Brock v. King*, 279 Ga. App. 335, 342 (2006), aff'd, sub nom. *King v. Brock*, 282 Ga. 56 (2007).

-16-

## THIRD CLAIM
## WRONGFUL FORECLOSURE

51.

The general allegations in paragraphs 1–47 are restated and incorporated herein by this reference.

52.

Georgia law, codified in part at O.C.G.A. § 23-2-114, requires "[p]owers of sale in deeds of trust, mortgages, and other [ ] instruments [to] be strictly construed and [ ] be fairly exercised."[11]

53.

Breach of the requirement of fairly exercising the power of sale is actionable: "[t]here exists a statutory duty upon a [mortgage lender] to exercise [the power of sale] fairly and in good faith.... Although arising from a contractual right, breach of this duty is a tort [, i.e., "wrongful foreclosure,"] compensable at law."[12]

---

[11] Although there is a technical difference between the concepts of "deed of trust" or "mortgage" and "security deed" these terms have been declared to be effectively interchangeable in this context. See, e.g., *U.S. Bank N.A. v. Gordon*, 289 Ga. 12, 14 (2011) ("[T]his court has treated deeds to secure debts... as equitable mortgages.")

[12] *Clark v. West*, 196 Ga. App. 456, 457 (1990), *Calhoun First Nat'l Bank v. Dickens*, 264 Ga. 285 (1994).

54.

A mortgage lender also breaches this duty if, in foreclosing, it violates terms of the parties' loan agreement.[13]

55.

A claim for wrongful foreclosure gives the aggrieved debtor alternative legal remedies of (a) cancellation of the foreclosure sale and recovery of damages not associated with the value of the property, or (b) damages for the loss of the equity in the unlawfully-foreclosed property.[14]

56.

"It is not necessary that [a] foreclosure be completed to bring an action for wrongful foreclosure. The fact that the creditor initiated foreclosure proceedings by advertising the properties for sale is sufficient to support a claim for wrongful foreclosure."[15]

---

[13] See *Heritage Creek Dev. Corp. v. Colonial Bank*, 268 Ga. App. 369, 374 (2004).

[14] *Calhoun First Nat'l Bank v. Dickens*, 264 Ga. 285 (1994) (reconsideration denied June 24, 1994), *Roylston v. Bank of America, N.A.*, 290 Ga. App. 556, 556 n.1 (2008), *Kennedy v. Gwinnett Commercial Bank*, 155 Ga. App. 327 (1980) (alternative remedies for wrongful foreclosure).

[15] *Clark v. West*, 196 Ga. App. 456, 457 (1990), *Sale City Peanut & Milling Co. v. Planters & Citizens Bank*, 107 Ga. App. 463, 465 (1963).

57.

HSBC is not authorized to exercise the power of sale, and is liable for wrongful

foreclosure in at least four ways.

*First, HSBC cannot exercise the power of sale because*
*the security deed was never properly assigned to it.*

58.

An agent's unauthorized conveyance of an interest in property will not pass

title and cannot divest its corporate principal of such interest.[16]

59.

For conveyances prior to July of 2011, there are just two methods of

memorializing within the four corners of a written instrument the authority of the

person signing the instrument to convey an interest in corporate-owned real

estate.[17]

---

[16] See *Rohm & Haas Co. v. Gainesville Paint & Supply Co.*, 225 Ga. App. 441, 442 (1997), *Dixon v. Bristol Sa*, 102 Ga. 461 (1897) (deed delivered by agent without authority of the principal "conveys no title either to the grantee or purchasers under him").

[17] This is confirmed by the State Bar of Georgia's revised 2008 title standards: "When a corporate instrument is either (i) executed by a corporate officer, that person's signature is attested by the secretary or assistant secretary (or other officer authorized to authenticate corporate records), and the corporate seal or a facsimile thereof is affixed, or (ii) executed by the president or vice president and that person's signature is attested by the secretary or assistant secretary (or other officer authorized to authenticate corporate records), a title examiner may assume that the officer executing the document in fact holds the position indicated, that such person is authorized to execute the document, and that the officer's signature is genuine. Comment: Source — O.C.G.A. Section 14-2-151. See also O.C.G.A. Section 14-5-7, Clause (ii)

-19-

60.

The first method requires (a) the signature of the instrument by the corporation's president or a vice president, (b) attestation of the signature by the corporate secretary, and (c) the affixing of the corporation's seal to the instrument.[18]

61.

The second method arises where no corporate president or vice president has signed the instrument, but an "attested corporate seal" is affixed to the instrument which indicates that the person signing the instrument is authorized to do so.[19]

---

above became effective July 1, 1992. The Examiner should bear in mind that the evidentiary presumption afforded by O.C.G.A. Sections 14-2-151 and 14-5-7 do not establish recording requirements. Recording is governed by O.C.G.A. Section 44-2-14, which requires, with respect to execution, a signature, two witnesses, and an attestation or acknowledgment. Neither the presence of a corporate seal, nor the signature of an officer specified in O.C.G.A. Section 14-5-7, is required for recording." STATE BAR OF GEORGIA TITLE STANDARDS 9.2.

[18] O.C.G.A. § 14-5-7. See *Bale v. Todd*, 123 Ga. 99, 103 (1905) ("no corporate seal being attached, no presumption could arise that the officers of the company had authority to execute the instrument"). Of course, even where the formalities associated with the safe harbor of § 14-2-151 are satisfied, the statutory presumption of "apparent authority" is still a *rebuttable* presumption. See, e.g., *Adams Loan & Inv. Co. v. Dolvin Realty Co.*, 48 Ga. App. 183, 172 S.E. 606, 607 (1934). ("An instrument executed in the name of a corporation by its president and under the seal of the corporation ... is presumed to have been executed by its authority, but this presumption is rebuttable"*[cits.]*).

[19] *Deljoo v. Suntrust Mortgage*, 295 Ga. App. 187 (2008). But see O.C.G.A. § 14-2-151 (b) (no corporate seal, but attested by the secretary or assistant secretary of the corporation or other officer to whom the bylaws or the directors have delegated the responsibility for authenticating records of the corporation).

-20-

62.

Where an instrument conveying an interest in real estate doesn't satisfy either of the two foregoing methods, it must be presumed that the instrument represents an unauthorized conveyance; and, therefore, it will not divest the corporate principal of the interest sought to be conveyed.[20]

*Second, HSBC failed to satisfy contractual conditions precedent to acceleration of the loan.*

63.

When the terms of a loan document require "notice of default" and right to cure, the loan cannot be accelerated before the condition precedent is satisfied.[21]

64.

Assuming, but not conceding, that HSBC is the proper successor to Crevecor,

---

[20] See *Rohm & Haas Co.*, 225 Ga. App. at 442, *Dixon*, 102 Ga. 461. The legislature confirmed the foregoing analysis in 2011 in a backwards sort of way. It amended O.C.G.A. § 14-5-7(b) to create the presumption that the signature of "a president, vice president, secretary, or assistant secretary [for the purpose of releasing] or transfer[ing] a security deed or mortgage" is presumptively authentic and authorized even in the absence of a formal attestation or seal. However, this provision did not go into effect until July 1, 2011, and does not affect conveyances recorded prior to that date—including the one at issue here.

[21] See *Fife v. Anderson Realty Brokers*, 155 Ga. App. 475, 476 (1980); see also *Sires v. Luke*, 544 F. Supp. 1155, 1164 (S.D. Ga. 1982) (notice of default and time to cure was a condition precedent to acceleration of note); *Stanley v. Hart*, 254 Ga. App. 258, 260 (2002) (writ of possession vacated where 15-day notice to cure was not given as required by agreement); O.C.G.A. § 13-3-4 (condition precedent must be performed before the contract becomes absolute and obligatory upon the other party).

HSBC breached the contractual duties owed the Coopers by their lender as described under Count I for Breach of Contract.

65.

Because HSBC failed to satisfy conditions precedent to its authority to declare an incurable default and to accelerate the Loan, any attempt to exercise the power of sale would be unauthorized and tortious.

> *Third, HSBC's advertising of the foreclosure sale is deficient*
> *per se because it fails to give a full description of the Home.*

66.

Pursuant to O.C.G.A. § 44-14-162, a nonjudicial power of foreclosure sale incorporates by reference the legal requirements imposed on a sheriff's sale in the county in which the sale is to occur.

67.

The sheriff's-sale-advertising requirements of O.C.G.A. § 9-13-140 apply to nonjudicial foreclosure sales.[22]

68.

The failure to satisfy any one of the so-called "*minimum legal requirements*" governing nonjudicial foreclosure sales — which includes the sheriff's-sale-

---

[22] See, e.g., *Dan Woodley Communities, Inc. v. Suntrust Bank*, 310 Ga. App. 656 (2011).

-22-

advertising requirements of O.C.G.A. § 9-13-140 — renders the advertisement

defective as a matter of law. (That is to say, it is defective whether or not the

defect could have chilled the proverbial "bid.").[23]

69.

One of these *minimum legal requirements* is found in O.C.G.A. § 9-13-140(a)

— a provision mandating that the notice of a sheriff's sale (i.e., nonjudicial

foreclosure sale) include the *"full and complete description of the property to be

sold...."*

70.

HSBC's legal advertisement for the Home fails to provide a *full and complete

description* of the Home as required under O.C.G.A. § 9-13-140(a) — a clear

breach of *a minimum legal requirement.*

71.

The breach of this *minimum legal requirement* renders the advertisement

---

[23] "The minimum legal requirements of a foreclosure advertisement are prescribed in O.C.G.A. § 9-13-140(a), and only a failure to properly include those items will render the advertisement defective as a matter of law." *Racette v. Bank of Amerrica., N.A.,* 318 Ga. App. 171, 175–76 (2012) (citing to *Southeast Timberlands,* infra). See *Shingler v. Coastal, etc., Credit Assn.,* 180 Ga. App. 539, 540 (1986) (failure to satisfy a legal requirement of a nonjudicial foreclosure sale does *not* present "a question of fact whether it affected a fair exercise of the power [of sale] and caused chilling of the sales price"). See also *Southeast Timberlands, Inc. v. Security National Bank,* 220 Ga. App. 359, 360 (1996) (physical precedent only) (failure to satisfy O.C.G.A. § 9-13-140(a) requirements renders advertisement defective as a matter of law) (citing to *Shingler*).

defective as a matter of law.[24]

*Fourth, HSBC failed to satisfy the assignment*
*requirement set forth under O.C.G.A. § 44-14-162(b)*

72.

Georgia law requires any foreclosing party to be the of-record assignee of the

security deed (granting the Power of Sale) "prior to the time of sale in the office of

the clerk...."[25]

73.

Because, as of the time of preparing this complaint, no proper assignment of

the Security Deed to HSBC has been perfected HSBC is not authorized to

exercise the Power of Sale.

74.

The actions of HSBC amount to the tort of wrongful foreclosure.

75.

The Coopers are entitled to rescission of any foreclosure sale and to special and

general damages, according to proof based on HSBC's threatened wrongful

foreclosure.

---

[24] O.C.G.A. § 9-13-140(a); *Southeast Timberlands, Inc. v. Security National Bank*, 220
Ga. App. 359 (1996) (precedent only).

[25] O.C.G.A. § 44-14-162(b).

76.

The Coopers are entitled to an award of damages because they have suffered extreme mental and emotional distress and humiliation.

77.

The Coopers do not seek more than $75,000 exclusive of interest and costs — even if a jury verdict exceeds this amount.

## FOURTH CLAIM
### EXPENSES OF LITIGATION

78.

The general allegations in paragraphs 1–47 and 51–77 are restated and incorporated herein by this reference.

79.

The Coopers have incurred and will continue to incur substantial attorney's fees and expenses to prosecute the above-styled action.

80.

HSBC's actions have demonstrated bad faith, have no legal justification, and have caused the Coopers unnecessary delay and expense.

81.

The Coopers are entitled to recover all costs of the prosecution of this matter,

-25-

including reasonable attorney's fees, pursuant to O.C.G.A. § 13-6-11 and other applicable law.

## NOTICE OF INTENT TO RECORD LIS PENDENS

82.

The Coopers hereby notify all concerned that they are undertaking to record a Notice of Lis Pendens regarding the Home in the Lis Pendens Docket of the real estate records of the Clerk of Upson County Superior Court.

WHEREFORE, the Coopers request an order or judgment for the following relief:

(a) On their First Claim: special and general damages for breach of contract, and an order rescinding and setting aside the foreclosure sale, including the cancellation of any Foreclosure Deed or Deed Under Power, or any subsequently-recorded muniment of title;

(b) On their Second Claim: an award of nominal damages if so appropriate;

(c) On their Third Claim: an order rescinding and setting aside the foreclosure sale, including the cancellation of any Foreclosure Deed or Deed Under Power, or any subsequently-recorded muniment of title, and an appropriate award of damages related to the consequences of the foreclosure;

(d) On their Fourth Claim: an award of attorney's fees and expenses of litigation pursuant to O.C.G.A. § 13-6-11 (not to exceed $75,000 when aggregated with any other damages award);

(e) For all costs;

-26-

(f)   For TRIAL BY JURY on any issue so triable; and,

(g)   For such other and further relief as the Court may deem equitable and just
       in the premises (with no damages to exceed $75,000 in the aggregate).

Respectfully submitted,

RICHARD S. ALEMBIK, PC

By: _____

Richard S. Alembik
State Bar No. 008770
Attorney for Plaintiffs

315 W. Ponce de Leon Ave.          ADDRESS FOR STATUTORY
Ste. 250                           ELECTRONIC SERVICE:
Decatur, GA 30030-5100             general_mailbox@alembik.com
(404) 373-0205
(404)795-8999 FAX

-27-